# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSEPH CLARK, | Case No. 3:23-CV-00488-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | |
| STATE OF NEVADA, *et al.*, | [ECF No. 37] |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Joseph Clark ("Clark") against Defendants Daniel Santos ("Santos"), Garrett Killion ("Killion"), Olivia Agle ("Agle"), and David Estevez ("Estevez") (collectively referred to as "Defendants"). Pending before the Court is Defendants' early exhaustion motion for summary judgment.[2] (ECF No. 37.) Because Clark failed to properly grieve his claims before filing suit, the Court recommends summary judgment be granted for Defendants.

## I.    BACKGROUND

### A.    Procedural History

Clark is a former inmate who was housed at Northern Nevada Correctional Center ("NNCC") and Lovelock Correction Center ("LCC"). (ECF No. 39-1.) Clark filed a civil rights complaint[3] under 42 U.S.C. § 1983 alleging Killion, Esteves, and Santos deliberately singled him out for a cell search in violation of the equal protection clause, and that Agle retaliated against him by having him transferred from NNCC to LCC for filing a grievance against another staff member. (ECF No. 11 at 4-6, 11-12.) The Court

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Clark opposed, (ECF No. 43), and Defendants replied, (ECF No. 44).

[3]    Although not relevant to this discussion, the Court notes Clark is proceeding on his First Amended Complaint, (ECF No. 8), after his initial complaint was dismissed with leave to amend, (ECF No. 3).

screened Clark's complaint pursuant to 28 U.S.C. §1915(a) and permitted him to proceed on two theories of liability: (1) Killion, Esteves,[4] and Santos violated the Fourteenth Amendment's Equal Protection Clause when they deliberately singled him out for a cell search; and (2) Agle retaliated against Clark in violation of the First Amendment by having him transferred to LCC for filing a grievance. (*Id.*) Clark seeks compensatory and punitive damages, as well as injunctive relief. (ECF No. 8 at 13.)

At the outset of litigation, the Court ordered that discovery be bifurcated, with the initial period of discovery being limited to the issue of whether Clark exhausted his administrative remedies prior to filing suit. (ECF No. 32.) The initial period of discovery closed on August 31, 2025, and Defendants filed the instant motion for summary judgment limited to the issue of exhaustion shortly thereafter. (ECF Nos. 37, 39.)

### B.    Factual Summary[5]

On August 12, 2022, Killion generated an incident report noting Clark and two other inmates "were found with unauthorized property." (ECF No. 37-2.) As a result, Killion referred Clark for a disciplinary hearing for unauthorized trading, bartering, or lending. (ECF No. 37-3 at 2.) According to the notice of charges, Killion received information that an inmate was observed walking with a green television. (*Id.*) Further investigation by Killion, Esteves, and Santos revealed that Clark was in possession of the green television and a hot pot, neither of which belonged to him. (*Id.*) At a subsequent disciplinary hearing

---

[4]    After this case failed to settle at the early mediation conference, the Court ordered the Attorney General's Office to indicate which Defendants it would accept service for. (ECF No. 18 at 2.) Additionally, the Court ordered that if the Attorney General's Office declined to accept service for any defendant, Clark was required to "file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s)." (*Id.*) The Attorney General's Office declined to accept service on behalf of Estevez and filed his last known address under seal. (ECF Nos. 19, 20.) However, Clark never filed a motion as ordered, and Estevez was never served. Accordingly, the Court recommends Estevez be dismissed without prejudice.

[5]    The only issue presented in Defendants' motion for summary judgment is whether Clark properly exhausted his administrative remedies. Therefore, the factual discussion herein is limited to this issue. The facts stated in this section are undisputed unless otherwise noted.

Clark pleaded guilty as charged. (*Id.* at 4; ECF No. 26.) The Court's review of the record shows Clark did not file a grievance related to the underlying search of his cell.[6] (*See* ECF Nos. 37-7; 43-1; 43-2.)

Shortly after the hearing, Agle submitted a case note requesting Clark be transferred to LCC to help depopulate NNCC. (ECF No. 37-9 at 8.) The case note reflected that Clark was classified as minimum security and housed in general population. (*Id.*) Agle recommended Clark be classified as the same upon being transferred to LCC. (*Id.*) However, Clark was classified as medium security by another staff member, who noted Clark was ineligible for minimum security due to the recent finding of guilt at the disciplinary hearing. (*Id.*) A few days later Clark was transferred to LCC. (*Id.*; ECF No. 39 at 2.)

Clark alleges that his transfer to LCC and reclassification to medium security was done in retaliation for filing Grievance # 2006-31-44795. (ECF Nos. 8 at 10; 37-5.) On October 30, 2022, roughly two weeks before his transfer to LCC, Clark submitted an Informal Grievance seeking to file a Prison Rape Elimination Act ("PREA") claim against non-party Lt. Flamm. (ECF No. 37-5 at 3.) According to Clark, Lt. Flamm told Clark he was his "cellies bitch" and that his "cellie is going to rape [him] in the middle of the night." (*Id.*) A subsequent investigation concluded Clark's "allegations were . . . unfounded." (ECF No. 37-6.) The Court's review of Clark's grievance record shows he never filed a grievance regarding the subsequent investigation, nor about his transfer to LCC. (*See* ECF Nos. 37-7; 43-1; 43-2.)

///

///

---

[6] The Court notes that Clark filed an Informal and First Level Grievance — Grievance # 2006-31-45000 — challenging his guilty plea at the disciplinary hearing. (ECF No. 37-8 at 5, 8.) According to Clark, Lt. Flamm forced him to plead guilty and made hostile statements toward him. (*Id.*) However, the voluntariness of Clark's plea at the disciplinary hearing is not at issue in this case. Clark's grievance is therefore immaterial to the question of exhaustion in this case.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2)

submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of their contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The nonmoving party "must come forth with evidence from which a jury could reasonably render a verdict in the nonmoving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586.

///

///

## III.    DISCUSSION

Before addressing the Parties' arguments, the Court will first discuss the relevant grievance procedures used by the Nevada Department of Corrections ("NDOC").

### A.    Grievance Procedure

AR 740 governs the grievance process at NDOC institutions. To properly exhaust their administrative remedies an inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (ECF No. 37-10 at 13-16); AR 740.08-.10. First, the inmate must file an Informal Grievance within six months "if the issue involves personal property damage or loss, personal injury, medical claims, or any other tort claims, including civil rights claims." (ECF No. 37-10 at 11); AR 740.08(4)(A). An inmate's failure to submit an Informal Grievance within this period "shall constitute abandonment of the offender's grievance at this and all subsequent levels." (ECF No. 37-10 at 12); AR 740.08(8). NDOC staff are required to respond within 45 calendar days. (ECF No. 37-10 at 13); AR 740.08(12). An inmate who is dissatisfied with the response to their Informal Grievance may appeal to the First Level within five calendar days. (ECF No. 37-10 at 13); AR 740.08(12)(A).

This next grievance level is called a "First Level Grievance." (ECF No. 37-10 at 13); AR 740.09. A First Level Grievance "should be reviewed, investigated, and responded to by the Warden at the institution where the incident . . . occurred, even if the Warden is the subject of the grievance." (ECF No. 37-10 at 13); AR 740.09(1). However, "[t]he Warden may utilize any staff in the development of a grievance response." (ECF No. 37-10 at 13); AR 740.09(1)(A). The time limit for a response is 45 days. (ECF No. 37-10 at 14); AR 740.09(6). Within five days of receiving a dissatisfactory response to the First Level Grievance, the inmate must then appeal to the next level, called the "Second Level Grievance." (ECF No. 37-10 at 14-15); AR 740.09(6)(A).

Officials must respond to a Second Level Grievance within 60 days and specify "the decision and the reasons for the decision." (ECF No. 37-10 at 15-16); AR 740.10(3), (5). Once the inmate receives a decision there are no further steps and the inmate is

considered to have exhausted their available administrative remedies. (ECF No. 37-10 at 13-16); AR 740.08-10. If prison staff fail to respond within the prescribed 60-day period, the inmate must submit an Offender Request Form. (ECF No. 37-10 at 15-16); AR 740.10(4). The official then has an additional 60 days to either respond to the Offender Request Form or the underlying grievance itself. (ECF No. 37-10 at 15-16); AR 740.10(4). If the official fails to do so "the offender will have exhausted the administrative remedy process." (ECF No. 37-10 at 15-16); AR 740.10(4). The official may also inform the inmate more time is needed in response to the Offender Request Form. (ECF No. 37-10 at 15-16); AR 740.10(4). In such cases the official must provide the inmate with "a timeframe in which a response will be provided." (ECF No. 37-10 at 15-16); AR 740.10(4). If the official fails to meet that timeline "the grievance process will be considered exhausted." (ECF No. 37-10 at 15-16); AR 740.10(4). Once a grievance is exhausted the inmate may then pursue civil litigation in federal court.

Inmates are required to follow proper procedure throughout the grievance process, and failure to do so may cause the inmate's grievance to be rejected. (ECF No. 37-10 at 4-5); AR 740.03(1). For example, a grievance which "does not factually demonstrate a loss or harm and does not state the action or remedy that will satisfy the claim" is deficient and will be returned "with an explanation as to what was missing for the grievance to be processed." (ECF No. 37-10 at 4); AR 740.03(1)(A). In such cases, the inmate must correct the issues identified by the official and resubmit their grievance at the same level. (ECF No. 37-10 at 6); AR 740.03(6).

Additionally, an official's failure to respond within the prescribed timeframes at each level "is not an automatic finding for the offender." (ECF No. 37-10 at 6); AR 740.03(9). Rather, when a response is overdue the inmate can *either* "proceed to the next grievance level" or "wait[] for the response before initiating the appeal." (ECF No. 37-10 at 6); AR 740.03(9)(B), (C). If the inmate chooses to wait for a response the official's delay "does not count against the offender's timeframe for an appeal." (ECF No. 37-10 at 6); AR 740.03(9)(C). Thus, even if an inmate's Informal or First Level grievance is not

responded to within the prescribed time limits, the inmate is still required to proceed through the grievance process outlined above to fully exhaust their claim.

### B.     Clark's Failure to Grieve

Defendants argue they are entitled summary judgment because "Clark failed to grieve his retaliation and equal protection claims" as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 37 at 10.) Clark argues the "plethora of evidence" attached to his opposition "prov[es] his compliance with the exhaustion criteria set out in the PLRA." (ECF No. 43 at 2.)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

However, an inmate need not exhaust when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). In *Ross v. Blake,* the Supreme Court provided a non-exhaustive list of circumstances

where administrative remedies were not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 642-44.

The Ninth Circuit has also "recognized specific circumstances that render administrative remedies unavailable." *Fordley v. Lizarraga*, 18 F.4th 344, 351-52 (9th Cir. 2021). For example, when prison officials fail to provide inmates with the proper forms in a timely manner the administrative process is effectively unavailable. *Id.* (citing *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009) (per curiam)). Nor are administrative remedies available when prison officials improperly "screen out" an inmate's grievance thus preventing them from "pursu[ing] the necessary sequence of appeals." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Lastly, if prison officials fail to respond to an inmate's grievance in the time prescribed by the relevant regulation it "may demonstrate that no administrative process is in fact available." *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005); *see also Andres v. Marshall*, 867 F.3d 1076, 1078-79 (9th Cir. 2017) (collecting cases from other circuits holding that administrative remedies are effectively unavailable when prison officials fail to respond to an inmate's grievance in the prescribed time period).

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted their administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Here, Defendants have carried their initial burden of showing Clark failed to grieve his underlying claims prior to filing suit. As mentioned above, Clark's grievance record shows he did not file a grievance related to the search of his cell, nor file a grievance related to his transfer to LCC. Thus, the burden now shifts to Clark to adduce evidence showing there is a genuine dispute of material fact related to his failure to grieve.

Clark argues he complied with the PLRA's exhaustion requirement as evidenced by the grievance records attached to his opposition. (ECF No. 43 at 2.) The Court disagrees. The Court has reviewed all the grievance records filed by Clark, (see ECF Nos. 43-1 at 4-71; 43-2 at 1-49), and it appears Clark collected all the grievances that, in his subjective view, show Defendants violated his rights in some capacity or another. For example, Clark labels Exhibit C as "Inmate Grievance Forms in which Plaintiff Joseph Clark claims retaliation and abuse by the Defendants." (ECF No. 43-1 at 32.) Similarly, Clark labels Exhibit B as "Inmate/Staff Communication Forms (kites) in which Plaintiff Joseph Clark claims retaliation and abuse by Defendants." (*Id.* at 4.) None of the grievances attached, however, relate to the underlying claims in this case. Indeed, most of the grievances were filed in 2024 or 2025, somewhere between two and three years after the events at issue in this case occurred.

As noted above, Clark did file Grievance # 2006-31-44795 alleging Lt. Flamm referred to him as his "cellies bitch," (ECF No. 37-5 at 2), and Grievance # 2006-31-45000 alleging Lt. Flamm forced him to plead guilty at his disciplinary hearing, (ECF No. 37-8 at

5). It is true that these grievances are tangentially related to the instant case in that the latter relates to the disciplinary hearing, and Clark alleges the former was the reason for his transfer to LCC. Such attenuated grievances, however, do nothing to provide prison officials with the requisite notice so that they have a "fair opportunity" "to address complaints internally" and "correct their own errors." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006)). In any event, even assuming the two grievances could be construed as providing sufficient notice, Clark failed to exhaust either. Clark abandoned Grievance # 2006-31-44795 at the Informal Level, (ECF No. 37-7 at 25), and Grievance # 2006-31-45000 at the First Level, (ECF No. 37-8 at 6). To properly exhaust either of these grievances, Clark was required to appeal each through the Second Level. (ECF No. 37-10 at 11-16); AR 740.08-.10.

Clark has adduced no evidence indicating he grieved his equal protection or retaliation claims prior to filing the instant suit. He has therefore failed to carry his burden of demonstrating a genuine dispute of material fact exists. Thus, the Court recommends summary judgment be granted in favor of Defendants based on Clark's failure to exhaust his administrative remedies as required by the PLRA.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that summary judgment be granted in favor of Defendants Santos, Killion, and Agle. (ECF No. 37.) As to Defendant Estevez, the Court recommends he be dismissed without prejudice because Clark failed to properly serve him as ordered.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any

notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants Daniel Santos, Garrett Killion, and Olivia Agle's motion for summary judgment, (ECF No. 37), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant David Estevez be **DISMISSED WITHOUT PREJUDICE** because Clark failed to properly serve him.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: January 13, 2026

_____
**UNITED STATES MAGISTRATE JUDGE**

12